UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No.: 23-CR-007 |
| V. | ) | Honorable Brenda K. Sannes |
| | ) | Chief U.S. District Court Judge |
| JOHN OATHOUT | ) | Northern District of New York |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

**I.      Procedural History**

Mr. John Oathout was arrested on December 21, 2021, by federal authorities and charged with Transportation of a Minor to Engage in Sexual Activity, in violation of 18 U.S.C. § 2423(a). On January 3, 2023, Mr. Oathout was indicted on the same charge and waived personal appearance for an arraignment. Thereafter, on November 9, 2023, Mr. Oathout pled guilty, pursuant to a Rule 11(c)(1)(C) plea agreement, to the single-count indictment. He is now scheduled to appear before this Court on July 9, 2024, for sentencing.

**II.     Custodial Status**

Mr. Oathout has remained in custody since the date of his arrest. Since his arrest, Mr. Oathout has remained in continuous, federal custody. By the date of his sentencing, he will have been in custody for a total of 33 months (2 years and 9 months).

**III.    Plea Agreement & Sentencing Guidelines**

Mr. Oathout faces a mandatory minimum sentence of ten years and a maximum statutory sentence of life. 18 U.S.C. 2423(a). He also faces up to a life term of supervised release, with a

1

minimum of five years. 18 U.S.C. 3583(k). The maximum fine that he faces is $250,000. 18 U.S.C. 3571(b).

### i. *Affect of the Proposed Plea Agreement*

If the Court were to accept the proposed, binding plea agreement, parties have agreed that Mr. Oathout be sentenced to a term of imprisonment of at least ten years and up to twenty-five years. Parties have also agreed that a term of supervised release in the amount of fifteen years be imposed. A fine may be imposed, as determined by the Court. Restitution of V1's losses as a result of Mr. Oathout's conduct is to be ordered. The standard special assessment of one-hundred dollars is to be imposed, with the possibility of the additional special assessment of $5,000, but only if the Court does not find Mr. Oathout to be indigent.

### ii. *The PSR's Guideline Calculation*

The PSR calculates Mr. Oathout's base offense level as being a twenty-eight, pursuant to U.S.S.G. § 2G1.3. PSR ¶ 20. Two levels are added because V1 was in the care of Mr. Oathout at the time of the conduct. PSR ¶ 21. An additional two levels are added because the conduct involved the use of an interactive computer service (i.e. a cell phone). PSR ¶ 22. Because the conduct involved travel to engage in a sexual act or sexual contact, two more levels are added. PSR ¶ 23. As a result of V1 being approximately five years old at the time of the conduct, eight levels are added. PSR ¶ 24. Finally, five additional levels are added on the basis that Mr. Oathout committed the illicit conduct over a matter of four days. PSR ¶ 29. Three levels are subtracted for Mr. Oathout's acceptance of responsibility and timely guilty plea. PSR ¶¶ 30-31. Ultimately, the PSR calculates Mr. Oathout's overall offense level as being forty-three. PSR ¶ 32.

Mr. Oathout received zero criminal history points as having no previous criminal convictions. PSR ¶ 37. As a result, he falls within the Criminal History Category of "I." *Id*. When combined with Mr. Oathout's overall offense level, the resulting advisory guideline range becomes life in prison. PSR ¶ 75.

Mr. Oathout raises one objection to the sentencing guideline calculation (set forth below). The special conditions of his supervised release have been reviewed with him, and there are no objections.

### IV.     Requested Sentence

Mr. Oathout respectfully requests that this Court impose the mandatory minimum sentencing in this case, that being 120 months. He proffers the following information in support of this requested sentence.

### V.     Sentencing Framework

Congress has set forth specific factors the Court should consider before imposing a sentence. Specifically, the Court shall consider the following:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;
2. The need for the sentence imposed –
    a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
    b. To afford adequate deterrence to criminal conduct;
    c. To protect the public from further crimes of the defendant; and
    d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner
3. The kinds of sentences available;
4. The kinds of sentence and the applicable sentence range;
5. Any pertinent policy statements;
6. The need to avoid unwarranted sentencing disparities; and
7. The need to provide restitution to any victims of the offense.

In consideration of these factors, a Court is to impose a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing. 18 U.S.C. 3553(a).

### VI. Mr. Oathout's History & Characteristics

Mr. Oathout is a 54-year-old individual with no previous criminal history. Though he had a previous involvement with child protective services concerning allegations of abuse concerning his daughter, the alleged conduct never resulted in criminal charges (conduct that Mr. Oathout disputes as having ever occurred). As evidenced by the statements made by his friend, Neils Christianson, Mr. Oathout has a history of being around other people's children and doing so without incident. Indeed, Mr. Christianson went so far as to say that Mr. Oathout helped raise his (Mr. Christianson's) children and otherwise spent a lot of time with his family.

Mr. Oathout is an individual with a long history of employment. In particular, he has significant experience within the construction trade, and most recently had his own flooring installation business. He has worked in the field of residential construction for his entire adult life. Upon release, it would be Mr. Oathout's intention to return to this kind of work in some capacity as long as doing so comports with his conditions of release.

Despite being a relatively productive member of society, Mr. Oathout overcame a somewhat unstable upbringing. His parents separated before he was born as a result of his father being verbally and physically abusive towards his brothers. Though his parents rekindled a relationship when Mr. Oathout was 6, there continued to be issues of emotional abuse and domestic violence. Since then, Mr. Oathout has dealt with issues of depression and times where he contemplated suicide. He has never totally addressed his mental health outside of getting a prescription for psychological medication from his primary care physician in 2016. Still, he has

managed to lead a fairly stable existence despite the instability of his childhood and subsequent depression.

Mr. Oathout's history, his relative lack of criminal justice involvement throughout his life and his ability to return to society as a productive member, all suggest that he is a low risk to reoffend. The length of sentence that he is guaranteed in this case offers further optimism: according to the United States Sentencing Commission, individuals who receive a sentence of 120 months or more, have significantly lower rates of recidivism than individuals who receive sentences below that range. Defense Exhibit 2 – USSC: "Length of Incarceration and Recidivism." As such, his history and characteristics offer support for a mandatory minimum sentence.

### VII.   Nature and Circumstances of the Offense

Mr. Oathout's conduct in this case, while serious and troubling, is not quite as egregious as much of the other conduct contemplated under 18 U.S.C. 2423(a) and the United States Sentencing Guidelines. He submits that his conduct falls toward the lower end of the continuum of behavior that encompasses his sentencing guideline subsection. Despite the government's contentions to the contrary, there is little evidence that anything happened between Mr. Oathout and V-1 beyond what he admitted to during his interview (that she held his penis while urinating, and then subsequently became aroused after her leaving his room). There is no credible evidence to the contrary.

What's more is the government's claim that Mr. Oathout had some kind of "transactional" relationship with the mother of V-1 is without any meaningful, concrete evidence. They point to money that Mr. Oathout sent to V-1's mother and suggest that this was in exchange for allowing Mr. Oathout to take V-1 on trips. However, this could just as easily be explained by the fact that

Mr. Oathout and V-1's mother were in a relationship, and he was providing her with support that she needed.

The forensic interview that the government cites to in its memo does not provide any measure of credibility to its claims that something more between Mr. Oathout and V-1 occurred. According to Dr. Jacqueline Bashkoff, a forensic psychologist and a qualified expert in the area of child forensic interviewing, the interviewer of V-1 fell "markedly-below the national protocol standards." Def. Ex. 1 – Dr. Bashkoff Report, p. 002. The interviewer did not follow time length protocols that typically suggest allowance of between 3 and 5 minutes for each year of a child's age. *Id*. This would suggest that the appropriate interview length for V-1 would be, at most, 25 minutes. *Id*. Instead, the interviewer questioned V-1 for 1 hour and 35 minutes. *Id*. Limiting the length of the interview is meant to reduce the chances of the child's exhaustion and protect against acquiescence. *Id*. In the interview of V-1, no such length reduction techniques were utilized. *Id*.

The interviewer often asked leading questions, repeated the same question over and over, and failed to follow up on answers by the child that did not fit the interviewer's belief of what happened. *Id*. at 002-004. In essence, the interviewer utilized tactics that were immeasurably coercive and meant to only confirm her own biases. *Id*. at 005. The way in which the interview was conducted should lead a viewer to conclude that it is just as likely that the statements further incriminating Mr. Oathout made by V-1 were made simply to get the interview over with, and thus, should not be considered as credible statements under the circumstances.[1]

---

[1] To this end, defense counsel objects to the government's inclusion of this interview as part of its sentencing argument. The defense would ask that this Court not consider this information in determining Mr. Oathout's sentence or otherwise conclude, on the record, that the same sentence would be imposed regardless of whether this information was relied on. If the Court intends to rely on this information to impose sentence, then defense counsel asks that sentencing be adjourned and that a hearing be scheduled to address the credibility of the interviewer.

Regardless of the credibility of the child forensic interview, Mr. Oathout is enormously remorseful for his actions. He recognizes the incredible harm that he has caused to V-1, and is trying to understand all that V-1 has likely had to go through as a result of his actions. Mr. Oathout further recognizes that he needs help and is more than willing to undergo long-term treatment to ensure that nothing like this ever happens again. He wants to get better and to be better.

Mr. Oathout's conduct in this case was terribly wrong. However, his conduct does not arise to the level of conduct of many other defendants convicted of the same crime. It is conduct that he is truly sorry for and wishes to resolve with long-term treatment.

### VIII. Mr. Oathout's Guideline Enhancement Objection

Mr. Oathout objects to the application of the two-level enhancement for his use of a computer or interactive computer service to facilitate travel to engage and prohibited sexual conduct pursuant to U.S.S.G. 2G1.3(b)(3)(A).

In *United States v. Dorvee*, the Second Circuit concluded that –

> adherence to the Guidelines results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders who, for example, distribute child pornography for pecuniary gain and who fall in higher criminal history categories. This result is fundamentally incompatible with § 3553(a). By concentrating all offenders at or near the statutory maximum, § 2G2.2 eviscerates the fundamental statutory requirement in § 3553(a) that district courts consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and violates the principle, reinforced in *Gall*, that courts must guard against unwarranted similarities among sentences for defendants who have been found guilty of dissimilar conduct.

616 F.3d at 187. Three years later, the Circuit further noted that a defendant's within-guideline sentence as substantively unreasonable when, *inter alia*, the "…all-but-inherent, enhancements

yielded, and the district court applied, a Guideline range that failed to distinguish between [the defendant's] conduct and other offenders whose conduct was far worse." *United States v. Jenkins*, 854 F.3d 181, 190 (2d Cir. 2017). Among the enhancements that the Circuit was referring was the "use of a computer" enhancement, which was applied in 95% of cases. *Id*. at 189.

In the case of Mr. Oathout, a similar enhancement applies under 2G1.3. A defendant can receive a two-level increase "[i]f the offense involved the use of a computer or an interactive computer service to (A) persuade, induce, entice, coerce or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor." U.S.S.G. 2G1.3(b)(3).

According to the United States Sentencing Commission, in 2023, 52.2% of defendants sentenced under 2G1.3 received the two-level increase under subsection (b)(3)(A). *See,* Defense Exhibit 3 – Use of Guidelines and Specific Offense Characteristics excerpt.[2] For subsection (b)(3)(B), 37.4% of defendants received this enhancement. *Id*. This means that in 89.6% of all cases sentenced pursuant to 2G1.3 in the year 2023, an enhancement for the use of a computer – either to facilitate or to solicit someone to engage – is applied.

In other words, this enhancement is inherent in the application of 2G1.3. Further it fails to differentiate Mr. Oathout from conduct that is far worse than his own. As such, he objects to the application of this guideline.

---

[2] This excerpt is from the "Sentenced individual Based" report. The full report can be found on the United States Sentencing Commission's website at: https://www.ussc.gov/research/data-reports/guideline/2023-guideline-application-frequencies. The "Guideline Based" report provides similar percentages of enhancement use: (A) 45.7% and (B) 38.7%.

## IX.	Conclusion

John Oathout is an individual who is clearly troubled. He has done something to V-1 that is incredibly wrong. However, Mr. Oathout is not without redeeming qualities. There is reason to believe that his risk to the community can diminish significantly based on the length of his sentence, and even more so when factoring in ongoing treatment and supervision. He asks that this Court consider all of these factors before imposing his sentence. He asks that the Court follow the parties' agreed upon sentencing range of between 10 and 25 years, and asks that this Court impose a mandatory minimum of 10 years in his case.


Dated: August 30, 2024                                    LISA PEEBLES
                                                         Federal Public Defender

                                              By:   *Michael P. McGeown-Walker*
                                                    Michael P. McGeown-Walker, Esq.
                                                    Assistant Federal Public Defender
                                                    Bar No.: 520776
                                                    54 State Street, Suite 310
                                                    Albany, New York 12207

## CERTIFICATE OF SERVICE

On the above date, the sentencing memorandum was filed with the Court and delivered via ECF/email to the following parties:

*AUSA, Carling Dunham*

Dated: August 30, 2024                                          */s/ Michael P. McGeown-Walker*
                                                                                  Michael P. McGeown-Walker, Esq.
                                                                                  Assistant Federal Public Defender